## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **NICHOLE COLBY** | ) | CASE NO. |
| 5437 Lake Road West, #1025 | ) | |
| Ashtabula, Ohio 44004 | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE |
| vs. | ) | |
| | ) | |
| **MICHAEL ZULLO** | ) | **COMPLAINT** |
| 3636 Samar Drive | ) | (Jury demand endorsed hereon) |
| Ashtabula, Ohio 44004 | ) | |
| *Individually and in his official capacity,* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **ASHTABULA CITY EMPLOYEES FEDERAL** | ) | |
| **CREDIT UNION** | ) | |
| 4717 Main Avenue | ) | |
| Ashtabula, Ohio 44004 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **THE CITY OF ASHTABULA** | ) | |
| c/o City Solicitor Michael Franklin | ) | |
| 110 West 44th Street | ) | |
| Ashtabula, Ohio 44004 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **PALMINA BENEDICT** | ) | |
| 4717 Main Avenue | ) | |
| Ashtabula, Ohio 44004 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JODY FODERETTI** | ) | |
| 4717 Main Avenue | ) | |
| Ashtabula, Ohio 44004 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **GREG KAYDO** | ) | |
| 4717 Main Avenue | ) | |
| Ashtabula, Ohio 44004 | ) | |

|  |  |
|---|---|
| and | ) |
|  | ) |
| **BARBARA ORN** | ) |
| 4717 Main Avenue | ) |
| Ashtabula, Ohio 44004 | ) |
|  | ) |
| and | ) |
|  | ) |
| **FREDERICK ROUNDS** | ) |
| 4717 Main Avenue | ) |
| Ashtabula, Ohio 44004 | ) |
|  | ) |
| and | ) |
|  | ) |
| **JUANITA THORPE** | ) |
| 4717 Main Avenue | ) |
| Ashtabula, Ohio 44004 | ) |
|  | ) |
| and | ) |
|  | ) |
| **JEAN VENDETTI** | ) |
| 4717 Main Avenue | ) |
| Ashtabula, Ohio 44004 | ) |
|  | ) |
| and | ) |
|  | ) |
| **CHUCK P. BROCKWAY** | ) |
| 4717 Main Avenue | ) |
| Ashtabula, Ohio 44004 | ) |
| *Individually and in his official capacity,* | ) |
|  | ) |
| and | ) |
|  | ) |
| **BETTY KIST** | ) |
| 4717 Main Avenue | ) |
| Ashtabula, Ohio 44004 | ) |
| *Individually and in her official capacity,* | ) |
|  | ) |
| and | ) |
|  | ) |
| **JOSEPH ROSE** | ) |
| 2819 West 13th Street | ) |
| Ashtabula, Ohio 44004 | ) |
| *Individually and in his official capacity,* | ) |
|  | ) |

2

and        )
          )
**AUGUST A. PUGLIESE**  )
4717 Main Avenue    )
Ashtabula, Ohio 44004   )
  *Individually and in his official capacity,* )
          )
and        )
          )
**ANN I. STRANMAN**   )
4717 Main Avenue    )
Ashtabula, Ohio 44004   )
  *Individually and in her official capacity,* )
          )
and        )
          )
**JULIE A. LATTIMER**   )
4717 Main Avenue    )
Ashtabula, Ohio 44004   )
  *Individually and in her official capacity,* )
          )
and        )
          )
**JAMES M. TRISKET**   )
4717 Main Avenue    )
Ashtabula, Ohio 44004   )
  *Individually and in his official capacity,* )
          )
  Defendants.    )

Plaintiff Nichole Colby ("Colby"), for her Complaint against Michael Zullo ("Zullo"), Ashtabula City Employees Federal Credit Union (the "Credit Union"), the City of Ashtabula (the "City"), Palmina Benedict, Jody Foderetti, Greg Kaydo, Barbara Orn, Frederick Rounds, Juanita Thorpe, Jean Vendetti (Benedict, Foderetti, Kaydo, Orn, Rounds, Thorpe, and Vendetti are collectively referred to as the "Board Members"), Chuck Brockway, Betty Kist, Joseph Rose, August A. Pugliese, Ann I. Stranman, Julie A. Lattimer, and James M. Trisket (Brockway, Kist, Rose, Pugliese, Stranman, Lattimer, and Trisket are collectively referred to as "City Council") (all Defendants are collectively referred to as "Defendants") alleges as follows:

3

## INTRODUCTION

1.     This lawsuit is brought in response to the sexual harassment, groping, and retaliatory firing of Nichole Colby perpetrated and orchestrated by Michael Zullo, the former Auditor of the City of Ashtabula and former Chairman of the Board of the Ashtabula City Employees Federal Credit Union.  While serving as both City Auditor and Chairman of the Credit Union Board, Zullo sent Colby—an employee of the Credit Union who reported to Zullo and worked in City Hall—lurid and salacious emails that she did not request or want.  He also invaded her personal space and physically assaulted her on City property.  When Colby complained about sexual harassment by Zullo, he berated her and orchestrated her firing just two days after she complained.  Other Defendants either aided Zullo, ratified his unlawful conduct, or failed to take necessary steps to prevent or remedy his unlawful conduct.  As outlined below, Colby brings this lawsuit to vindicate her rights under Ohio and federal law.

## PARTIES

2.     Colby is a female United States citizen and a resident of Ohio.

3.     At all times relevant to this lawsuit, Colby was an "employee" within the meaning of Chapter 4112 of the Ohio Revised Code.

4.     Upon information and belief, Zullo is an Ohio resident.

5.     At all times relevant to this lawsuit, Zullo was Auditor of the City.

6.     At all times relevant to this lawsuit, Zullo was Chairman or a Member of the Board of Directors of the Credit Union.

7.     At all times relevant to this lawsuit, Zullo was an "employer" within the meaning of Chapter 4112 of the Ohio Revised Code.

8.      At all times relevant to this lawsuit, for purposes of federal law, Zullo was a "state actor," acting under color of state law.

9.      Upon information and belief, Ashtabula City Employees Federal Credit Union is a financial institution existing for the purpose of providing financial services to employees of the City and their families.

10.     The Credit Union is located in the Ashtabula Municipal Building, which is City property.

11.     At all times relevant to this lawsuit, the Credit Union was an "employer" within the meaning of Chapter 4112 of the Ohio Revised Code, because it acts directly or indirectly in the interest of a political subdivision of the State and/or because it employs four or more persons within the State.

12.     At all times relevant to this lawsuit, the Credit Union was a "person" within the meaning of Chapter 4112 of the Ohio Revised Code.

13.     At all times relevant to this lawsuit, for purposes of federal law, the Credit Union was a "state actor," because it conspired with public officials, and/or because it acted as an agent of a political subdivision of the State, and/or because it acted jointly with public officials, and/or because public officials coerced or participated in its actions and decisions, and/or because there is a pervasive entwinement between the Credit Union and the State.

14.     The City of Ashtabula is a political subdivision of the State of Ohio.

15.     At all times relevant to this lawsuit, the City was an "employer" within the meaning of Chapter 4112 of the Ohio Revised Code.

16.     At all times relevant to this lawsuit, the City was a "person" within the meaning of Chapter 4112 of the Ohio Revised Code.

17.  At all times relevant to this lawsuit, the City was a "state actor" for purposes of federal law.

18.  Upon information and belief, Palmina Benedict is a resident of Ohio.

19.  At all times relevant to this lawsuit, Benedict was a Member of the Board of Directors of the Credit Union.

20.  At all times relevant to this lawsuit, Benedict was an "employer" within the meaning of Ohio Revised Code Chapter 4112.

21.  At all times relevant to this lawsuit, Benedict was a "person" within the meaning of Ohio Revised Code Chapter 4112.

22.  At all times relevant to this lawsuit, for purposes of federal law, Benedict was a "state actor," because she conspired with public officials, and/or because she acted as an agent of a political subdivision of the State, and/or because she acted jointly with public officials, and/or because public officials coerced or participated in her actions and decisions, and/or because there is a pervasive entwinement between her as a Credit Union Board Member and the State.

23.  Upon information and belief, Jody Foderetti is a resident of Ohio.

24.  At all times relevant to this lawsuit, Foderetti was a Member of the Board of Directors of the Credit Union.

25.  At all times relevant to this lawsuit, Foderetti was an "employer" within the meaning of Ohio Revised Code Chapter 4112.

26.  At all times relevant to this lawsuit, Foderetti was a "person" within the meaning of Ohio Revised Code Chapter 4112.

27.     At all times relevant to this lawsuit, for purposes of federal law, Foderetti was a "state actor," because she conspired with public officials, and/or because she acted as an agent of a political subdivision of the State, and/or because she acted jointly with public officials, and/or because public officials coerced or participated in her actions and decisions, and/or because there is a pervasive entwinement between her as a Credit Union Board Member and the State.

28.     Upon information and belief, Greg Kaydo is a resident of Ohio.

29.     At all times relevant to this lawsuit, Kaydo was a Member of the Board of Directors of the Credit Union.

30.     At all times relevant to this lawsuit, Kaydo was an "employer" within the meaning of Ohio Revised Code Chapter 4112.

31.     At all times relevant to this lawsuit, Kaydo was a "person" within the meaning of Ohio Revised Code Chapter 4112.

32.     At all times relevant to this lawsuit, for purposes of federal law, Kaydo was a "state actor," because he conspired with public officials, and/or because he acted as an agent of a political subdivision of the State, and/or because he acted jointly with public officials, and/or because public officials coerced or participated in his actions and decisions, and/or because there is a pervasive entwinement between him as a Credit Union Board Member and the State.

33.     Upon information and belief, Barbara Orn is a resident of Ohio.

34.     At all times relevant to this lawsuit, Orn was a Member of the Board of Directors of the Credit Union.

35.     At all times relevant to this lawsuit, Orn was an "employer" within the meaning of Ohio Revised Code Chapter 4112.

36.     At all times relevant to this lawsuit, Orn was a "person" within the meaning of Ohio Revised Code Chapter 4112.

37.     At all times relevant to this lawsuit, for purposes of federal law, Orn was a "state actor," because she conspired with public officials, and/or because she acted as an agent of a political subdivision of the State, and/or because she acted jointly with public officials, and/or because public officials coerced or participated in her actions and decisions, and/or because there is a pervasive entwinement between her as a Credit Union Board Member and the State.

38.     Upon information and belief, Frederick Rounds is a resident of Ohio.

39.     At all times relevant to this lawsuit, Rounds was a Member of the Board of Directors of the Credit Union.

40.     At all times relevant to this lawsuit, Rounds was an "employer" within the meaning of Ohio Revised Code Chapter 4112.

41.     At all times relevant to this lawsuit, Rounds was a "person" within the meaning of Ohio Revised Code Chapter 4112.

42.     At all times relevant to this lawsuit, for purposes of federal law, Rounds was a "state actor," because he conspired with public officials, and/or because he acted as an agent of a political subdivision of the State, and/or because he acted jointly with public officials, and/or because public officials coerced or participated in his actions and decisions, and/or because there is a pervasive entwinement between him as a Credit Union Board Member and the State.

43.     Upon information and belief, Juanita Thorpe is a resident of Ohio.

44.     At all times relevant to this lawsuit, Thorpe was a Member of the Board of Directors of the Credit Union.

45.     At all times relevant to this lawsuit, Thorpe was an "employer" within the meaning of Ohio Revised Code Chapter 4112.

46.     At all times relevant to this lawsuit, Thorpe was a "person" within the meaning of Ohio Revised Code Chapter 4112.

47.     At all times relevant to this lawsuit, for purposes of federal law, Thorpe was a "state actor," because she conspired with public officials, and/or because she acted as an agent of a political subdivision of the State, and/or because she acted jointly with public officials, and/or because public officials coerced or participated in her actions and decisions, and/or because there is a pervasive entwinement between her as a Credit Union Board Member and the State.

48.     Upon information and belief, Jean Vendetti is a resident of Ohio.

49.     At all times relevant to this lawsuit, Vendetti was a Member of the Board of Directors of the Credit Union.

50.     At all times relevant to this lawsuit, Vendetti was an "employer" within the meaning of Ohio Revised Code Chapter 4112.

51.     At all times relevant to this lawsuit, Vendetti was a "person" within the meaning of Ohio Revised Code Chapter 4112.

52.     At all times relevant to this lawsuit, for purposes of federal law, Vendetti was a "state actor," because she conspired with public officials, and/or because she acted as an agent of a political subdivision of the State, and/or because she acted jointly with public

officials, and/or because public officials coerced or participated in her actions and decisions, and/or because there is a pervasive entwinement between her as a Credit Union Board Member and the State.

53.    Upon information and belief, Chuck P. Brockway is a resident of Ohio.

54.    At all times relevant to this lawsuit, Brockway was President of, and a Member of, Ashtabula City Council.

55.    At all times relevant to this lawsuit, Brockway, as President and a Member of Ashtabula City Council, had supervisory and appointing authority over Zullo as City Auditor.

56.    At all times relevant to this lawsuit, Brockway was a "person" within the meaning of Ohio Revised Code Chapter 4112.

57.    At all times relevant to this lawsuit, Brockway was a "state actor" for purposes of federal law.

58.    Upon information and belief, Betty Kist is a resident of Ohio.

59.    At all times relevant to this lawsuit, Kist was Vice President of, and a Member of, Ashtabula City Council.

60.    At all times relevant to this lawsuit, Kist, as Vice President and a Member of Ashtabula City Council, had supervisory and appointing authority over Zullo as City Auditor.

61.    At all times relevant to this lawsuit, Kist was a "person" within the meaning of Ohio Revised Code Chapter 4112.

62.    At all times relevant to this lawsuit, Kist was a "state actor" for purposes of federal law.

63.    Upon information and belief, Joseph Rose is a resident of Ohio.

64.    At all times relevant to this lawsuit, Rose was a Member of Ashtabula City Council.

65.  At all times relevant to this lawsuit, Rose, as a Member of Ashtabula City Council, had supervisory and appointing authority over Zullo as City Auditor.

66.  At all times relevant to this lawsuit, Rose was a "person" within the meaning of Ohio Revised Code Chapter 4112.

67.  At all times relevant to this lawsuit, Rose was a "state actor" for purposes of federal law.

68.  Upon information and belief, August A. Pugliese is a resident of Ohio.

69.  At all times relevant to this lawsuit, Pugliese was a Member of Ashtabula City Council.

70.  At all times relevant to this lawsuit, Pugliese, as a Member of Ashtabula City Council, had supervisory and appointing authority over Zullo as City Auditor.

71.  At all times relevant to this lawsuit, Pugliese was a "person" within the meaning of Ohio Revised Code Chapter 4112.

72.  At all times relevant to this lawsuit, Pugliese was a "state actor" for purposes of federal law.

73.  Upon information and belief, Ann I. Stranman is a resident of Ohio.

74.  At all times relevant to this lawsuit, Stranman was a Member of Ashtabula City Council.

75.  At all times relevant to this lawsuit, Stranman, as a Member of Ashtabula City Council, had supervisory and appointing authority over Zullo as City Auditor.

76.  At all times relevant to this lawsuit, Stranman was a "person" within the meaning of Ohio Revised Code Chapter 4112.

77.  At all times relevant to this lawsuit, Stranman was a "state actor" for purposes of federal law.

78.  Upon information and belief, Julie A. Lattimer is a resident of Ohio.

79.  At all times relevant to this lawsuit, Lattimer was a Member of Ashtabula City Council.

80.  At all times relevant to this lawsuit, Lattimer, as a Member of Ashtabula City Council, had supervisory and appointing authority over Zullo as City Auditor.

81.  At all times relevant to this lawsuit, Lattimer was a "person" within the meaning of Ohio Revised Code Chapter 4112.

82.  At all times relevant to this lawsuit, Lattimer was a "state actor" for purposes of federal law.

83.  Upon information and belief, James M. Trisket is a resident of Ohio.

84.  At all times relevant to this lawsuit, Trisket was a Member of Ashtabula City Council.

85.  At all times relevant to this lawsuit, Trisket, as a Member of Ashtabula City Council, had supervisory and appointing authority over Zullo as City Auditor.

86.  At all times relevant to this lawsuit, Trisket was a "person" within the meaning of Ohio Revised Code Chapter 4112.

87.  At all times relevant to this lawsuit, Trisket was a "state actor" for purposes of federal law.

## JURISDICTION AND VENUE

88.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because Colby's claims arise under 42 U.S.C. §§ 1983 and 1988, and under the Fourteenth Amendment to the United States Constitution.  Jurisdiction is proper in this Court over Colby's state-law claims under 28 U.S.C. § 1367(a) because those claims arise out of the same facts and circumstances as her federal claims, and form part of the same case or controversy.

89.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because at least one Defendant resides in this District and all Defendants reside in Ohio, and because a substantial part of the events giving rise to the claim occurred in this District.

## **FACTUAL ALLEGATIONS**

90.    Colby was hired by the Credit Union as its Manager on or about June 28, 2010.

91.    The Credit Union is housed within the Ashtabula Municipal Building, on City property.

92.    The Credit Union provided Colby no employee handbook or training explaining how to report and respond to sexual harassment in the workplace.

93.    During Colby's employment with the Credit Union, Zullo subjected Colby to a series of unwelcome sexual advances.

94.    On July 14, 2010, via email, Zullo asked to buy Colby a drink.

95.    Around this time, Zullo would intrude upon Colby's personal space when he visited her office, making her feel uncomfortable.

96.    On the morning of July 20, 2010, Zullo sent Colby an email that stated he would "be down to see you later," and "I bet you look very sexy today!"

97.    Later that morning, Zullo grabbed Colby's buttocks in the North stairwell of Ashtabula City Hall.

98.    Colby chastised Zullo for grabbing her buttocks and indicated to him his touching was unwelcome.

99.    In response, Zullo pressed his crotch against Colby's buttocks as she walked away.

100.    Zullo explained that molestation as wanting to see what Colby's fiancé "enjoys."

101.    On July 29, 2010, Zullo sent Colby an email asking what she was doing over the coming weekend.

102.    In response, Colby stated that she would be boating with her fiancé, and asked what
        Zullo would be doing with his boat.

103.    In a thinly veiled reference to his desire to have sex with Colby, Zullo then replied via
        email that he "would like to dock it in you for the weekend."

104.    When Colby's response indicated Zullo's comment was inappropriate, he responded by
        making reference to Ms. Colby's underwear, the top of which he had apparently
        glimpsed over Colby's pants' waistband in the Credit Union office while she was
        bending down to retrieve something from a low file drawer.

105.    Zullo's actions interfered with Colby's ability to do her job and made her uncomfortable
        to come to work.

106.    On August 6, 2010, Colby learned that Pamela Mixer, a former Credit Union employee,
        had complained to the executives of the Ashtabula City Employee Union that Zullo made
        unwanted sexual advances to her as well.

107.    Three days later, on August 9, 2010, Colby herself complained to Beth O'Donnell, the
        Credit Union's consultant, that Zullo made unwelcome sexual advances to her and Mixer.

108.    On August 11, 2010, just two days after her complaint, Zullo screamed at Colby in his
        Ashtabula City Hall office for accusing him of sexual harassment.

109.    During his tirade, Zullo exclaimed that O'Donnell had relayed Colby's sexual harassment
        complaint to the Credit Union Board, and that he was being investigated for it.

110.    Zullo also screamed at Colby that he would never forgive her for her complaint of sexual
        harassment.

111.    That same day, August 11, 2010, the Credit Union, the Board Members, and Zullo fired
        Colby.

112.   When Colby asked why she was being fired, Board Members told her simply "you know why."

113.   Neither the Credit Union, the Board Members, Zullo, nor anyone else has given Colby another reason why she was fired.

114.   On September 8, 2010, through Counsel, Colby sent a letter to City Council, the Credit Union, the Ashtabula City Solicitor, and to Zullo, explaining what Defendants had done to her.

115.   In response to her letter, City Council subpoenaed Colby to submit to questioning under oath by the City's Deputy Solicitor before City Council, and to turn over the emails Zullo sent her.

116.   Colby complied with the subpoena.

117.   Upon information and belief, Colby's testimony was part of an investigation City Council purported to conduct into her allegations.

118.   Defendants never gave Colby any assurances Zullo would be kept away from her during the investigation.

119.   To the contrary, City Council and the Credit Union allowed Zullo to continue working in the same building with Colby for over four months after she informed Defendants of her allegations.

120.   On or about January 12, 2011, Zullo published a letter to the editor in the *Ashtabula Star Beacon* in which he stated that City Council investigated Colby's claims and concluded they were false.

121.   In particular, Zullo stated City Council conducted a "very complete and thorough investigation" into Colby's allegations and did not discipline him "because the facts proved the allegations were false."

122.   Upon information and belief, City Council reached no decision on the truth of Colby's allegations.

123.   Upon information and belief, City Council stopped its investigation of Colby's allegations because Zullo "retired" from his position as City Auditor.

124.   Upon information and belief, Zullo "retired" instead of providing City Council with access to his email account when it was requested by City Council in order to determine whether he sent the emails in question to Colby.

125.   None of the Defendants have provided Colby with a response to her allegations.

## FIRST CLAIM FOR RELIEF – 42 U.S.C. § 1983
### (Against all Defendants)

126.   Paragraphs 1–125 of this Complaint are hereby incorporated as if fully rewritten herein.

127.   Zullo sexually harassed Colby by subjecting her to unwelcome sexual advances and touching that unreasonably interfered with her ability to do her job and created a hostile work environment.

128.   Zullo also sexually harassed Colby by making submission to his sexual advances an actual or implicit condition of her job.

129.   Zullo's sexual harassment of Colby violated her rights under the Fourteenth Amendment to the United States Constitution.

130.   Zullo acted under color of state law when he sexually harassed Colby in violation of her Fourteenth Amendment rights.

131.   At all times relevant to this lawsuit, Zullo was a final policymaker for the City.

132.  As a final policymaker, Zullo's actions can be attributed to the City for purposes of 42 U.S.C. § 1983.

133.  Through Zullo's actions, the City has or had a policy or custom of permitting, encouraging, or engaging in sexual harassment of individuals on City property, in violation of the Fourteenth Amendment.

134.  At all times relevant to this lawsuit, the City and City Council had supervisory or appointing authority over Zullo.

135.  Upon information and belief, neither the Credit Union, the City, nor City Council provided Zullo with sufficient, if any, sexual harassment training.

136.  By their failure to train, supervise, or discipline Zullo, the City and City Council have ratified and/or aided and/or participated in Zullo's actions.

137.  The City and City Council were aware of Zullo's harassment of Colby because she complained to them.

138.  The City and City Council took no disciplinary action against Zullo for his sexual harassment of Colby and allowed him to continue working for several months in the same building as her.

139.  Through the failure of the City and City Council to discipline Zullo for his sexual harassment of Colby, the City and City Council acquiesced in his actions, thereby creating a custom of allowing or encouraging sexual harassment on City property, in violation of the Fourteenth Amendment.

140.  At all times relevant to this lawsuit, the City and Council Members were acting under color of state law.

141.   The Credit Union participated in, allowed, encouraged, acquiesced in, and/or ratified Zullo's sexual harassment of Colby, culminating in her termination for refusing Zullo's sexual advances.

142.   At all times relevant to this lawsuit, the Credit Union acted under color of state law because it conspired with Zullo, a public official, and/or acted as his agent, and/or acted jointly with him, and/or because he coerced or participated in its actions and decisions, and/or because there was a pervasive entanglement between it and Zullo.

143.   The Board Members participated in, allowed, encouraged, acquiesced in, and/or ratified Zullo's sexual harassment of Colby, culminating in her termination for refusing Zullo's unwanted sexual advances.

144.   At all times relevant to this lawsuit, the Board Members acted under color of state law because they conspired with Zullo, a public official, and/or acted as his agent, and/or acted jointly with him, and/or because he coerced or participated in their actions and decisions, and/or because there was a pervasive entanglement between them and Zullo.

145.   As a direct and proximate result of Defendants' actions, Colby has lost wages and suffered other compensatory damages, emotional distress, and incurred attorneys' fees and costs of suit.  Some or all of Colby's damages are ongoing and will continue into the future.

146.   All Defendants are therefore liable to Colby under 42 U.S.C. § 1983 for violating her Fourteenth Amendment rights.

<u>**SECOND CLAIM FOR RELIEF – SEXUAL HARASSMENT**</u>
**(Against Defendants Zullo and the Credit Union)**

147.   Paragraphs 1–146 of this Complaint are hereby incorporated as if fully rewritten herein.

148.   Colby is a member of a protected class.

149.   Colby was subjected to unwelcome sexual harassment in the form of sexual advances and touching.

150.   The harassment was based on sex and/or gender.

151.   Colby's submission to Zullo's unwelcome sexual advances, comments, and touching was made an express or implied condition for her receipt of job benefits and/or her refusal to submit to the sexual advances resulted in Colby's termination.

152.   Zullo's actions were sufficiently severe or pervasive to affect the terms, conditions, or privileges of Colby's employment.

153.   Zullo's actions were both subjectively and objectively offensive.

154.   Upon learning of Zullo's sexual harassment, the Credit Union failed to take prompt remedial action.

155.   At all relevant times, Zullo was a supervisory and/or management employee with actual or apparent authority over hiring, firing, advancement, and other terms and conditions of employment.

156.   The Credit Union is liable for the actions of Zullo, its supervisory and/or managerial employee.

157.   Zullo and the Credit Union are liable to Colby for quid pro quo sexual harassment and for hostile environment sexual harassment pursuant to Ohio Revised Code sections 4112.02(A) and 4112.99, and Ohio common law.

158.   As a direct and proximate result of Zullo's and the Credit Union's actions, Colby has lost wages and suffered other compensatory damages.

159.   As a direct and proximate result of the conduct of Zullo and the Credit Union, described above, Colby suffered severe emotional distress, which emotional distress is ongoing.

160.    Zullo's and the Credit Union's conduct, as described above, was done: maliciously or with conscious disregard of the rights of Colby and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by agents or servants of Zullo and the Credit Union who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which they are liable for punitive damages.

## THIRD CLAIM FOR RELIEF – RETALIATION
### (Against Defendants Zullo, the Credit Union, and the Board Members)

161.    Paragraphs 1–160 of this Complaint are hereby incorporated as if fully rewritten herein.

162.    On or about August 9, 2010, Colby complained to the Credit Union of sexual harassment by Zullo.

163.    Colby's complaint was protected activity.

164.    Two days later, on or about August 11, 2010, Zullo berated Colby for her protected activity and told her he would never forgive her for it.

165.    On or about August 11, 2010, the Credit Union, the Board Members, and Zullo fired Colby, offering "you know why" as the only reason.

166.    The Credit Union, the Board Members, and Zullo fired Colby in retaliation for her protected activity, in violation of Ohio Revised Code Chapter 4112.

167.    As a direct and of those Defendants' unlawful and discriminatory misconduct, described above, Colby suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured.  Some or all of her damages will continue to accrue indefinitely into the future.

168.    Zullo, the Credit Union, and the Board Members are each liable to Colby for retaliation pursuant to Ohio Revised Code Sections 4112.02(I) and 4112.99.

169.    The conduct of these Defendants, as described above, was done: maliciously or with

conscious disregard of the rights of Colby and with a great probability of causing harm,

and/or was done maliciously and/or by aggravated or egregious fraud by agents or

servants of these Defendants, who, as principal or master, knowingly authorized,

participated in, or ratified those actions and/or omissions, for which they are liable for

punitive damages.

### FOURTH CLAIM FOR RELIEF – DENIAL OF PUBLIC ACCOMMODATIONS
#### (Against Defendants Zullo, the City, and City Council)

170.    Paragraphs 1–169 of this Complaint are hereby incorporated as if fully rewritten herein.

171.    At all times relevant to this lawsuit, Zullo was an employee of a place of public

accommodation.

172.    At all times relevant to this lawsuit, the City property housing the Auditor's office and

the office of the Credit Union was a place of public accommodation.

173.    At all times relevant to this lawsuit, the City and City Council were employees, keepers,

or managers of a place of public accommodation.

174.    The unlawful actions of Zullo and other Defendants against Colby took place on City

property, a place of public accommodation.

175.    Through Zullo's sexual harassment and assault, culminating in her termination, Zullo, the

City, and City Council have denied Colby the full enjoyment of the accommodations,

advantages, facilities, or privileges of a place of public accommodation.

176.    Zullo, the City, and City Council are therefore liable to Colby for denial of public

accommodations pursuant to Ohio Revised Code sections 4112.02(G) and 4112.99.

177.    As a direct and of those Defendants' unlawful and discriminatory misconduct, described

above, Colby suffered emotional distress and humiliation, lost salary, wages and benefits,

incurred attorneys' fees and costs of litigation, and has been otherwise injured.  Some or all of her damages will continue to accrue indefinitely into the future.

178.    The conduct of Defendants, as described above, was done: maliciously or with conscious disregard of the rights of the Colby and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by agents or servants of Defendants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which Zullo and City Council are liable for punitive damages in their individual capacities.

## FIFTH CLAIM FOR RELIEF – AIDING AND ABETTING DISCRIMINATION
### (Against all Defendants)

179.    Paragraphs 1–178 of this Complaint are hereby incorporated as if fully rewritten herein.

180.    By engaging in the practices described above, Defendants aided, abetted, incited, compelled, or coerced another person in committing unlawful discriminatory practices, obstructed and prevented another person from complying with Ohio laws against discrimination, and/or attempted directly or indirectly to commit an unlawful discriminatory practice in violation of Ohio Revised Code Chapter 4112.

181.    As a direct and of Defendants' unlawful and discriminatory misconduct, described above, Colby suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured.  Some or all of her damages will continue to accrue indefinitely into the future.

182.    Defendants are therefore liable to Colby pursuant to Ohio Revised Code sections 4112.02(J) and 4112.99.

183.    The conduct of Defendants, as described above, was done: maliciously or with conscious disregard of the rights of Colby and with a great probability of causing harm, and/or was

done maliciously and/or by aggravated or egregious fraud by agents or servants of Defendants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which the Credit Union and the Board Members are liable for punitive damages, and for which Zullo and City Council are liable for punitive damages in their individual capacities.

## SIXTH CLAIM FOR RELIEF – NEGLIGENT TRAINING, RETENTION, AND SUPERVISION
### (Against the City, the Credit Union, City Council, and the Board Members)

184.    Paragraphs 1–183 of this Complaint are hereby incorporated as if fully rewritten herein.

185.    At all times relevant to this lawsuit, Zullo was a supervisory and/or management employee for the City and the Credit Union.

186.    Upon information and belief, the City, the Credit Union, City Council, and the Board Members provided Zullo with no, or insufficient, training on the application of equal employment opportunity laws in the workplace.

187.    Through his sexual harassment of Colby and unlawful actions towards her, Zullo was incompetent and/or acted incompetently in the duties of his employment with the City and the Credit Union.

188.    The City, the Credit Union, City Council and the Board Members took no disciplinary or remedial action against Zullo for his unlawful behavior towards Colby.

189.    The City, the Credit Union, City Council, and the Board Members failed to exercise due and reasonable care in retaining, training, and/or supervising Zullo while he was a managerial employee with supervisory authority over Colby and others.

190.    The City, the Credit Union, City Council, and the Board Members knew or should have known of Zullo's incompetence.

191. As a direct and proximate result of the negligence of the City, the Credit Union, City Council, and the Board Members, as described above, Colby has suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

192. The City, the Credit Union, City Council, and the Board Members are therefore liable to Colby for negligent training, retention, and supervision.

193. The conduct of Defendants, as described above, was done: maliciously or with conscious disregard of the rights of Colby and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by agents or servants of Defendants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which the Credit Union and the Board Members are liable for punitive damages, and for which the City Council Members are liable for punitive damages in their individual capacities.

### SEVENTH CLAIM FOR RELIEF – ASSAULT AND BATTERY
**(Against Zullo)**

194. Paragraphs 1–193 of this Complaint are hereby incorporated as if fully rewritten herein.

195. Zullo made a willful threat, offer, or attempt to offensively touch Colby without her consent.

196. Zullo's actions reasonably placed Colby in fear of his unwelcome touching.

197. Zullo had the apparent ability to carry out his threat, offer, or attempt.

198. Zullo carried out his threat, offer, or attempt and intentionally engaged in offensive and non-consensual touching of Colby.

199.    Zullo knew with substantial certainty that his actions would bring about harmful or

offensive touching.

200.    As a direct and proximate result of Zullo's actions, Colby has suffered emotional distress

and humiliation, incurred attorneys' fees and costs of litigation, and has been otherwise

injured.  Some or all of her damages will continue to accrue indefinitely into the future.

201.    Zullo is therefore liable to Colby for assault and battery.

202.    The conduct of Zullo, as described above, was done: maliciously or with conscious

disregard of the rights of Colby and with a great probability of causing harm, and/or was

done maliciously and/or by aggravated or egregious fraud by agents or servants of Zullo,

who, as principal or master, knowingly authorized, participated in, or ratified those

actions and/or omissions, for which he is liable for punitive damages.

## EIGHTH CLAIM FOR RELIEF – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Zullo)

203.    Paragraphs 1–202 of this Complaint are hereby incorporated as if fully rewritten herein.

204.    Through his actions towards Colby, as described above, Zullo intended to cause

emotional distress or knew or should have known that his actions would result in serious

emotional distress to her.

205.    Zullo's actions towards Colby, as described above, were extreme and outrageous, went

beyond all possible bounds of decency, and can be considered as utterly intolerable in a

civilized community.

206.    Zullo's actions towards Colby, as described above, were the proximate cause of serious

emotional harm suffered by Colby.

207. Colby's emotional harm is serious and of a nature that no reasonable person could be expected to endure.

208. Zullo is therefore liable to Colby for intentional infliction of emotional distress.

209. The conduct of Zullo, as described above, was done: maliciously or with conscious disregard of the rights of Colby and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by agents or servants of Zullo, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which he is liable for punitive damages.

### NINTH CLAIM FOR RELIEF – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
### (Against the Credit Union, Zullo, and the Board Members)

210. Paragraphs 1–209 of this Complaint are hereby incorporated as if fully rewritten herein.

211. There are clear public policies in Ohio against employees being sexually harassed in the workplace and/or being fired for engaging in protected activity.

212. Permitting employees to be sexually harassed in the workplace and/or fired for engaging in protected activity would jeopardize those public policies.

213. Colby's firing was motivated by conduct related to these clear public policies.

214. The Credit Union, Zullo, and the Board Members lacked any overriding legitimate business justification for firing Colby.

215. In the event Colby has no actionable statutory remedies against the Credit Union, Zullo, and the Board Members for sexual harassment or retaliation, those Defendants are liable to Colby under Ohio common law for wrongful discharge in violation of public policy.

216. As a direct and proximate result of these Defendants' actions, Colby has suffered emotional distress and humiliation, incurred attorneys' fees and costs of litigation, and

has been otherwise injured.  Some or all of her damages will continue to accrue indefinitely into the future.

217.   The conduct of these Defendants, as described above, was done: maliciously or with conscious disregard of the rights of the Colby and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by agents or servants of these Defendants, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which they are liable for punitive damages.

## TENTH CLAIM FOR RELIEF – DEFAMATION
### (Against Zullo)

218.   Paragraphs 1–217 of this Complaint are hereby incorporated as if fully rewritten herein.

219.   Zullo made false statements of fact about Colby by stating or implying that City Council investigated her allegations and reached a conclusion that she had made false and untrue allegations.

220.   Zullo published his false statements of fact about Colby to third parties, including publishing them in the newspaper.

221.   Zullo had no privilege to make his false statements of fact about Colby.

222.   Zullo made his false statements of fact about Colby with either knowledge that they were false or with reckless disregard for whether they were true.

223.   Zullo's false statements of fact about Colby were defamatory per se and/or caused her special harm.

224.   Zullo is therefore liable to Colby for defamation.

225.    As a direct and proximate result of Zullo's actions, Colby has suffered emotional distress and humiliation, incurred attorneys' fees and costs of litigation, and has been otherwise injured.  Some or all of her damages will continue to accrue indefinitely into the future.

226.    The conduct of Zullo, as described above, was done: maliciously or with conscious disregard of the rights of Colby and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by agents or servants of Zullo, who, as principal or master, knowingly authorized, participated in, or ratified those actions and/or omissions, for which he is liable for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Colby demands judgment and relief against Defendants as follows:

1.  Compensatory damages against all Defendants in an amount in excess of $75,000.00 to be proven at trial in order to fully compensate her for her injuries caused by Defendants;

2.  Punitive damages against Defendants Ashtabula City Employees Federal Credit Union and the Board Members, and against Zullo and City Council in their individual capacities;

3.  Equitable relief, including but not limited to front pay;

4.  Back pay for all lost wages;

5.  Recovery of all lost fringe benefits;

6.  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988 and all other applicable federal or Ohio laws, to the extent permitted by those laws;

7.  Any other relief that this Court deems just and equitable.

## JURY DEMAND

A trial by jury is hereby demanded in the within matter in the maximum number of jurors allowed by law.

Respectfully submitted,

 /s/ Matthew D. Besser
CATHLEEN M. BOLEK (0059884)
MATTHEW D. BESSER (0078071)
**BOLEK BESSER GLESIUS LLC**
Monarch Centre, Suite 302
5885 Landerbrook Drive
Cleveland, Ohio 44124
T 216.464.3004
F 866.542.0743
cbolek@bolekbesser.com
mbesser@bolekbesser.com

**Counsel for Plaintiff**